IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORRIS & DICKSON CO., LLC,<br>Plaintiff,<br><br>v.<br><br>GLAXOSMITHKLINE LLC, formerly known as "SMITHKLINE BEECHAM CORPORATION," and doing business as "GLAXOSMITHKLINE,"<br>TEVA PHARMACEUTICAL INDUSTRIES LTD., and<br>TEVA PHARMACEUTICALS USA, INC.,<br>Defendants. | CIVIL ACTION<br><br><br><br>NO. 23-480 |

MEMORANDUM

HODGE, K.                                                              May 30, 2023

Plaintiff filed suit before this Court on February 7, 2023 against Defendants GlaxoSmithKline LLC ("GSK"), Teva Pharmaceutical Industries LTD., and Teva Pharmaceuticals USA, Inc. (jointly "Teva") alleging that they violated antitrust laws through their settlement agreement to end a patent suit over GSK's brand-name drug Lamictal and Teva's generic form, lamotrigine. (ECF No. 1.) Presently before the Court is Defendants' Motion to Transfer (ECF No. 12)[1] requesting that pursuant to Section 28 U.S.C. § 1404(a) and the "first-to-file" doctrine[2] this matter be transferred to the United States District Court for the District of New Jersey ("District of New Jersey") where a similar case, *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995 (D.N.J.) (the "New Jersey Action"), has been ongoing since

---

[1] The Motion to Transfer and Motion to Stay were originally filed only by Defendants GlaxoSmithKline LLC and Teva Pharmaceuticals USA, Inc. but Defendant Teva Pharmaceutical Industries Ltd. subsequently joined these motions. (ECF No. 26.)

[2] The "first-to-file" doctrine is sometimes referred to as the "first-filed" rule, and therefore, the Court uses these terms interchangeably.

1

February 17, 2012.  Contemporaneously, Defendants also filed a Motion to Stay (ECF No. 14) this case pending the outcome of their Motion to Transfer.  For the reasons more fully set forth below, the Court grants Defendants' Motion to Transfer and, thereby, denies the Motion to Stay as moot.

## I.     BACKGROUND

The basis of this litigation stems from the Hatch-Waxman Act of 1984 that allows drug manufacturers to bring generics to market for a 180-day exclusivity period by piggybacking off a brand-name drug's safety and efficacy studies and Food and Drug Administration ("FDA") approval, through what is known as an Abbreviated New Drug Application ("ANDA").  (*Id.* at 3.)  To do so, the generic manufacturer certifies in its ANDA that the brand-name drug's patent is invalid, but if the brand-name manufacturer challenges that designation, FDA approval for the generic is enjoined for a certain time-period.  (*Id.* at 4.)  And that is exactly what occurred: GSK challenged Teva in patent litigation which delayed Teva's generic version of lamotrigine from getting FDA approval and coming to market.  (*Id.* at 6.)  Yet in that time, GSK, under the relevant regulatory framework, could have launched or licensed its own generic form of Lamictal, known as an "Authorized Generic (AG)."  (*Id.*)

Though Teva was successful at the patent litigation bench trial as to one infringement claim, the judge informed the parties that he would subsequently deliberate as to the remaining claims whereupon GSK and Teva decided, instead, to settle.  (*Id.* at 7.)  As part of the settlement, GSK agreed not to launch an AG in exchange for Teva selling generic lamotrigine later than it otherwise would have been able to.  (*Id.* at 9-14.)  Plaintiff, a purchaser of Defendants' drugs, now claim that the settlement agreement amounts to an antitrust violation as it caused them to

pay more than they otherwise would have, had market competition not been delayed. (*Id.* at 43, 45.)

On February 17, 2012, a putative class action was filed in the District of New Jersey that, similar to the present matter, alleged antitrust violations as a result of the same settlement agreement that resolved patent litigation between the same Defendants in the New Jersey Action. *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995 (D.N.J.). That litigation has resulted in a lengthy and complicated history with numerous appeals and stays issued by the court. *See King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.*, 791 F.3d 388 (3d Cir. 2015); *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, No. 12-995, 2018 WL 6567709 (D.N.J. Dec. 12, 2018) ("*Lamictal I*"), *vacated and remanded sub nom. In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) ("*Lamictal II*"); *In re Lamictal Direct Purchaser Antitrust Litig.*, No. 12-995, 2021 WL 2349828 (D.N.J. June 7, 2021) ("*Lamictal III*"); *In re Lamictal Direct Purchaser Antitrust Litig.,* No. 12-995, 2022 WL 190651, at *3-4 (D.N.J. Jan. 21, 2021) ("*Lamictal IV*").

In the New Jersey Action, the United States Court of Appeals for the Third Circuit determined that a plausible antitrust theory exists under the Supreme Court's precedent in *FTC v. Actavis*, 133 S. Ct. 2223 (2013). *See King Drug Co. of Florence, Inc.,* 791 F.3d at 388. However, class certification and attempts to certify smaller subclasses were denied after a decade's worth of protracted litigation where each party vigorously argued their respective positions on behalf of their clients. *See Lamictal I*, 2018 WL 6567709; *Lamictal II*, 957 F.3d at 191; *Lamictal III,* 2021 WL 2349828; *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-995 (D.N.J.) (ECF No. 553.). The most recent denial of class certification occurred on

February 1, 2023.  *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995 (D.N.J.) (ECF Nos. 553 & 554).

Following this denial of class certification, purchasers not named as plaintiffs in the New Jersey Action brought suit in the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania"), based on the same claims and allegations but styled as individual rather than putative class actions. These cases include the present matter, *MLI RX, LLC, et al. v. GlaxoSmithKline LLC, et al.*, 23-cv-429 (E.D. Pa.) filed on February 2, 2023, and *FWK Holdings, LLC. v. GlaxoSmithKline LLC, et al.*, 23-cv-757 (E.D. Pa.) filed on February 27, 2023.  In all three actions before this Court, Defendants have moved to transfer the cases to the District of New Jersey pursuant to the "first-to-file" doctrine and the federal transfer statute in 28 U.S.C. §1404(a) where the New Jersey Action has been ongoing for a decade. They have also requested a stay pending the Court's determination. On May 30, 2023, this Court found in *MLI RX, LLC* that the first-to-file doctrine and 28 U.S.C. § 1404(a) supported a transfer to the District of New Jersey.

**II.    DISCUSSION**

The parties recycle the arguments made in *MLI RX, LLC* – a nearly identical case involving the same defendants, but different plaintiffs represented by the same counsel – as to the grounds for and against a venue transfer under the first-to-file doctrine and Section 1404(a). The difference in this case is that Plaintiff does not contend that Pennsylvania is its home forum. Instead, Plaintiff points to one Defendant (GSK) and non-parties to this action, three of the sixteen plaintiffs (AmerisourceBergen Co., AmerisourceBergen Drug Co., Value Drug Co) in *MLI RX, LLC,* who are located in Pennsylvania.  For the reasons set forth below, similar to the decision in *MLI RX, LLC,* the Court agrees that the first-to-file doctrine and Section 1404(a)

4

support a transfer of this case to the District of New Jersey. Having determined that a venue transfer is appropriate, the Court denies Defendants' Motion to Stay as moot.

### 1. **The First-to-File Doctrine**

Under the first-to-file doctrine, when two substantially similar lawsuits are filed in different federal district courts with jurisdiction, there is a presumption that the court where the matter was filed first should hear both lawsuits except in special circumstances. *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3d Cir. 1941); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990). The doctrine "is not cabined to proceedings involving identical parties and identical issues, but extends to cases where there is a substantial overlap of the subject matter." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 457 (E.D. Pa. 2013). It is also not absolute, and includes the following recognized exceptions: (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) where the later-filed action has developed further than the first-filed action; and (6) when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum. *Univ. of Pennsylvania*, 850 F.2d at 976; *Owen v. Nestle Healthcare Nutrition, Inc.*, No. 22-cv-2855, 2023 U.S. Dist. LEXIS 36638 (D.N.J Mar. 6, 2023).

Though this case involves a different Plaintiff than the New Jersey Action, substantial overlap between the two actions is evident from the complaints: both contain the same factual information and assert the same legal theories against the same Defendants. Indeed, Plaintiff does not dispute these matters are substantially similar. It also acknowledges that it makes the very same arguments that were made by the plaintiffs in *MLI RX, LLC* noting that "[t]his same opposition will be filed in those dockets as well." (ECF No. 27 at 8 fn. 1.) Like that case, Plaintiff's arguments for departure from the first-to-file doctrine center around speculative

conjecture that this Court will be faster at resolving the parties' dispute, based on it being the "less congested court." (*Id.* at 32.)

Considering the substantial overlap, which even the Plaintiff concedes, the Court finds that the New Jersey Action and this case are sufficiently parallel. The Court also finds that the Plaintiff fails to set forth sufficient circumstances warranting departure from the first-to-file doctrine. Splitting this litigation between two venues, where the first-filed action is advanced and this case is in its infancy, would not lead to judicial acceleration, but rather, inefficient duplication along with potentially conflicting rulings. Similar to *MLI RX, LLC*, Plaintiff has presented no evidence that resolution of this dispute on the merits has been subverted or that a recognized exception is applicable. The Court's reasoning in *MLI RX, LLC* applies. Accordingly, this Court finds that under the first-to-file doctrine a transfer to the District of New Jersey is appropriate.

    **2. <u>Section 1404(a) Transfer Criteria</u>**

Pursuant to Section 1404(a), a district court may also transfer any civil action to any other district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts are afforded broad discretion to determine whether transfer is justified under Section 1404(a), though Defendants as the movants, have the burden of establishing the need. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Since the parties do not dispute that this action could have been brought in the District of New Jersey, the Court must apply several public and private factors to determine which forum is most appropriate to consider this case. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The private factors include: the plaintiff's forum preference; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora); and the location of books and records (also limited to the extent that the files could not be produced in the alternative forum). *Id*. at 879. The public factors include: the practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public polices of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

Plaintiff's and Defendants' briefing mirror the arguments made in *MLI RX, LLC* where this Court also found that a venue transfer was appropriate under Section 1404(a). But unlike *MLI RX, LLC,* where three of the sixteen plaintiffs resided in Pennsylvania, Plaintiff – a Louisiana company with a Louisiana principal place of business – cannot call Pennsylvania its home forum. In this matter there is even less of a nexus to this District than in *MLI RX, LLC*, making the factors for a Section 1404(a) transfer even stronger. Plaintiff acknowledges that its arguments are the same and does not point to any additional information that would warrant a different analysis than in *MLI RX, LLC.* (ECF No. 27 at 8 fn. 1.) Therefore, for similar reasons, the Court finds that the relevant public and private factors strongly weigh in favor of a Section 1404(a) venue transfer.

### III.    CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Transfer and Deny Defendants' Motion to Stay. An appropriate Order will follow.

**IT IS SO ORDERED.**

**BY THE COURT:**

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**